Beverly NEHMER, Claude Washington, Linda Wagenmakers, Robert Fazio, George Claxton, Julio Gonzales, Paul Ray Jensen, William Madden, David Maier, Bruce Miller, and the Vietnam Veterans of America, Plaintiffs,

v.

UNITED STATES VETERANS' ADMINISTRATION, the Veterans' Advisory Committee on Environmental Hazards, the Scientific Council of the Veterans' Advisory Committee on Environmental Hazards, and the Administrator of Veterans' Affairs, Defendants.

No. C 86–6160 TEH.

United States District Court,
N.D. California.

Dec. 22, 1987.

Linda S. Peterson, Kathleen M. Eyre, Los Angeles, Cal., Barton F. Stichman, Ju-lia A. Trotter, Vietnam Veterans of America Legal Services, Washington, D.C., for plaintiffs.

Richard K. Willard, Asst. Atty. Gen., Joseph P. Russoniello, U.S. Atty., G. Christopher Stoll, Asst. U.S. Atty., San Francisco, Cal., Theodore C. Hirt, Charles W. Sorenson, Jr., Lisa A. Olson, Attorneys, Civil Div., U.S. Dept. of Justice, Washington, D.C., for defendants.

ORDER CERTIFYING CLASS.

THELTON E. HENDERSON, District Judge.

This matter comes before the Court on plaintiffs' motion for class certification. On October 26, 1987, the Court held oral argument on plaintiffs' motion. Having carefully considered the lengthy papers and oral arguments of counsel, the Court grants plaintiffs' motion, as explained below.

*I. Introduction*

This lawsuit was filed by the named plaintiffs on February 2, 1987 as a class action on behalf of Vietnam veterans. These veterans have allegedly contracted diseases due to exposure to herbicides containing dioxin. Plaintiffs contend that the Veterans' Administration ("VA"), the Veteran's Advisory Committee on Environmental Hazards ("Committee") and the Scientific Council of that advisory committee ("Council") have improperly implemented the Veteran's Dioxin and Radiation Exposure Compensation Standards Act of 1984, 38 U.S.C. § 354, ("Dioxin Act"). The Dioxin Act empowers the Veterans' Administration to determine what diseases are caused by exposure to dioxin and promulgate regulations to govern dioxin-related disability claims.

Following this enactment, defendants adopted such a regulation, 38 C.F.R. § 3.311a. That regulation, published in the Federal Register on August 26, 1985, (50 Fed.Reg. 34452), ("Dioxin Regulation" or "regulation") provides that one skin disease, chloracne, arises from exposure to Dioxin. Under the regulation, chloracne

alone is deemed service-related and therefore compensable.

Plaintiffs allege that in making this decision, defendants failed to adequately review the pertinent scientific studies of dioxin-related diseases, failed to impose proper guidelines for the consideration of relevant evidence, and failed to apply the correct legal standard to determine which diseases are compensable. In addition, plaintiffs contend that the regulation contradicts the weight of scientific evidence and is therefore arbitrary and capricious. Thus, plaintiffs argue that the VA must enact new guidelines and void all compensation decisions made on the basis of the Dioxin Regulation.

By this motion, plaintiffs seek to certify a class consisting of:

all current or former service members, or their next of kin (a) who are eligible to apply to, who will become eligible to apply to, or who have an existing claim pending before the Veteran's Administration for service-connected disabilities or deaths arising from exposure during active-duty service to herbicides containing dioxin or (b) who have had a claim denied by the VA for service-connected disabilities or deaths arising from exposure during active-duty service to herbicides containing dioxin",

Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Class Certification ("Motion") at 8.

## II. Discussion

Under Federal Rule of Civil Procedure 23(a), plaintiffs must satisfy all of the following requirements before a class may be satisfied: 1) numerosity—the class must be so numerous that joinder of all its members is impracticable; 2) commonality—there must be questions of law or fact common to the class; 3) typicality—the claims or defenses of the named parties must be typical of the claims or defenses of the class; and 4) adequacy—the representative parties must fairly and adequately protect the interests of the class.

In addition to these prerequisites, plaintiffs must satisfy one of the elements of Rule 23(b). Here, plaintiffs seek to certify a class under Rule 23(b)(2), which requires plaintiffs to establish that the "party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole", F.R.C.P. 23(b)(2).

Before addressing each of these requirements, an initial observation is appropriate. In determining whether to certify a class, this Court must only determine whether plaintiffs have satisfied the prerequisites of Rule 23. As the United States Supreme Court stated in *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 2153, 40 L.Ed.2d 732 (1974), "[t]he question [for class certification] is not whether the ... plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met."

In analyzing the propriety of certifying this class, the court will first examine the Rule 23 requirements, and then will turn to defendants' four objections to class certification, none of which neatly fit the Rule's compartments.

### A. Requirements of Rule 23(a).

#### 1. Numerosity.

The first prong under Rule 23(a) requires that the class be sufficiently numerous that joinder of all class members is impracticable.

The numerosity requirement is easily met here, since plaintiffs seek to certify a class of all Vietnam veterans who have been exposed to dioxin and either have filed or will file a claims for benefits. Defendants do not dispute that plaintiffs have met the numerosity requirement, and this class is similar, if not identical, to the class certified in *In Re Agent Orange Product Liability Litigation*, 506 F.Supp. 762, 787, (E.D.N.Y.1980) (conditional certification); 100 F.R.D. 718, 720 (E.D.N.Y.1983) (final certification), in which Vietnam veterans exposed to "Agent Orange" sued the chem-

ical companies that manufactured the herbicide.

### 2. Commonality.

The second requirement of Rule 23 is that the class members share common questions of law and fact. The commonality requirement is satisfied "where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated", *American Finance System, Inc. v. Harlow*, 65 F.R.D. 94, 107 (D.Md.1974), citing, *inter alia*, *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909 (9th Cir.1964).

Plaintiffs argue that all the class members are linked by one common question: whether the defendants properly implemented the Dioxin Act in determining that chloracne alone is service-related and therefore compensable. Defendants, on the other hand, note that some of the named plaintiffs and purported class members have never submitted a claim under the Dioxin Regulation challenged by this lawsuit. Instead, these plaintiffs applied for benefits, and were denied, prior to the enactment of the Dioxin Regulation. Thus, defendants argue, this class is not linked by the same injury.

Plaintiffs put forth two responses. First, they claim that the pre–1985 regulations have the identical effect of denying benefits to eligible claimants. Second, they argue that were the pre–1985 claimants to file a claim for benefits now, they would be denied under the challenged regulation.

Plaintiffs' "identical effect" argument does not demonstrate commonality. Plaintiffs claim that the 1985 regulation, and the procedures used to enact it, violate the Dioxin Act. Plaintiffs denied benefits prior to the regulation's enactment lack standing to pose that legal challenge to their denial. See, e.g., *Black Coalition v. Portland School District No. 1*, 484 F.2d 1040, 1043 (9th Cir.1973), rejecting the standing of high school students to challenge disciplinary procedures that were never used against these students.

■ However, plaintiffs are correct that pre–1985 claimants share a threat of future harm with other class members. Plaintiffs allege that if any of the pre–1985 claimants seek benefits under the present Dioxin Regulation, defendants will apply the Dioxin Regulation to deny them benefits. Courts have frequently certified classes whose members share a common threat of future harm. See, e.g., *Cleaver v. Wilcox*, 499 F.2d 940, 942–943 (9th Cir.1974), certifying class of indigent parents who are or might be parties to dependency proceedings under California law; *Bittner v. Secretary of Defense*, 625 F.Supp. 1022, 1025–1026 (D.D.C.1985), granting standing to the National Gay Task Force (an organization created to protect the rights of homosexuals), to challenge the army's discharges of homosexual service members, since its members may be discharged in the future.

Therefore, plaintiffs have demonstrated commonality under a theory of shared threats of future harm.

### 3. Typicality.

Under the third requirement of Rule 23(a), the named plaintiffs must present claims that are "typical" of those of the class. The requirement is satisfied if the "class representative[s] ... possess the same interest and suffer the same injury as the class members," *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed. 2d 453 (1977). Typicality does not require that the named plaintiffs' claims be identical to those of the other class members. Moreover, a finding of commonality will ordinarily support a finding of typicality. See *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 2370 n. 13, 72 L.Ed.2d 740 (1982) ("The commonality and typicality requirements of Rule 23(a) tend to merge").

■ The Court holds that the named plaintiffs' claims are typical of those of the class. Though some of the named plaintiffs were denied benefits prior to promulgation of the Dioxin Regulation, as noted previously, these pre–1985 plaintiffs share the threat of future harm with all other

class plaintiffs, and seek to challenge the identical regulation and procedures used to enact it.

### 4. Adequacy.

The fourth and final prerequisite of Rule 23(a) is that "the representative parties will fairly and adequately protect the interest of the class". This requirement has been construed to have three components: 1) competence of plaintiffs' counsel; 2) absence of collusion; and 3) absence of antagonistic interest between named plaintiffs and remaining class members, *Eisen v. Carlisle and Jacquelin*, 391 F.2d 555 at 562–563 (2nd Cir.1968).

Defendants do not contest that plaintiffs have met the adequacy requirement. Plaintiffs are represented by experienced counsel, the record contains no evidence of collusion, and the interests of the named plaintiffs are coextensive, and not antagonistic, to the remaining class members.

Therefore, plaintiffs have met the four prerequisites of Rule 23(a).

### B. Requirements of Rule 23(b).

In addition to satisfying the prerequisites of 23(a), plaintiffs must also qualify under Rule 23(b)(2). Rule 23(b)(2) requires that:

> ... the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Federal Rule of Civil Procedure 23(b)(2).

Plaintiffs have demonstrated that the party opposing the class, defendants, have acted on grounds applicable to the class, since defendants have denied, and will continue to deny, benefits to allegedly eligible veterans under the Dioxin Regulation.

Defendants argue, however, that injunctive relief on behalf of the class is not appropriate, since any relief gained by plaintiffs, such as the drafting of a new regulation, will necessarily benefit all future claimants, whether they are class members or not. Therefore, defendants

argue, class certification is not "necessary" for the successful completion of this litigation.

This objection is the first of defendants' four objections to class certification, to which the Court now turns.

### 1. The "Need Requirement".

Defendants argue that the 9th Circuit has adopted a "need requirement" for certifying Rule 23(b)(2) class actions. The "requirement" arises when plaintiffs seek equitable relief, and the benefit of that relief will, as a practical matter, inevitably flow to non-class members. In these cases, class certification is often not necessary for plaintiffs to gain full relief, and some courts therefore deny certification.

Before turning directly to the facts of this case, the Court first notes that it is questionable whether the "need requirement" is good law in the 9th Circuit. Defendants cite two cases that purportedly establish such a requirement. The first, *James v. Ball*, 613 F.2d 180 (9th Cir.1979), *reversed on other grounds* 451 U.S. 355, 101 S.Ct. 1811, 68 L.Ed.2d 150 (1981) involved a challenge to the constitutionality of an Arizona statute limiting voting rights to landowners for special agricultural elections. The District Court denied class certification, and the 9th Circuit ruled that the denial was not an abuse of discretion, since "the relief sought will, as a practical matter, produce the same result as formal class-wide relief", *Id.* at 186. The court then noted that some circuits have upheld the need requirement, while others have rejected it, and then stated that "it was not unmindful of the benefits of a class action", *Id.* at 186.

This brief discussion in *James* does not constitute an affirmance of this requirement. Moreover, the precedential value of *James* is limited not only because of the Supreme Court reversal but by later discussion of *James* in *Zepeda v. INS*, 753 F.2d 719 (9th Cir.1983). In *Zepeda*, the court discussed *James* as belonging to a line of cases that "initially found support in this circuit ... [but] have been reversed by the Supreme Court", *Id.* at 729, n. 1. Though the 9th Circuit did not overrule the

need requirement in *Zepeda*,[1] it cast doubt upon its continued vitality.

Defendants also cite *Officers for Justice v. Civil Service Commission C and C San Francisco*, 371 F.Supp. 1328, 1330 (N.D. Cal.1973). Though Judge Peckham did delay determining whether a class should be certified in the early stages of a challenge to police department hiring and promotion regulations, Judge Peckham later certified a class, 473 F.Supp. 801, 810–811 (N.D.Cal. 1979). Therefore, *OFJ* does not support denying certification in this case.

Finally, there are strong policy reasons against rigidly employing a need requirement. Litigating complex claims by class actions is a favored procedure, not only because class actions efficiently resolve the disputes of numerous similarly situated individuals, but because they have other advantages. For example, the use of class actions allows a large number of plaintiffs to pool resources to hire attorneys capable of conducting complex litigation. Class actions require court approval of settlements, so that courts can ensure that the interests of a wide group of people have been protected and advanced. Class actions enable unidentified class members to enforce court orders with contempt proceedings, rather than relying on the res judicata in a subsequent lawsuit. Finally, class actions enable plaintiffs to avoid the mooting of important claims. See Murphy and Butterfoss, *The "Need" Requirement: A Barrier to Class Actions under Rule 23(b)(2)*, 67 Georgetown Law Journal 1211, 1219 (1978–1979).

The need requirement overlooks these procedural and substantive advantages by focusing solely on the nature of the relief sought by the would-be class action plaintiffs. Given these advantages, and the fact that the necessity requirement does not appear in the text of the rule,[2] this Court questions whether it should impose the need requirement on the plaintiffs in this case in the absence of clearer guidance by the Ninth Circuit.

■ Even if the Court were to impose that requirement, plaintiffs have demonstrated a need for class certification. While it is true that plaintiffs seek primarily equitable relief that would equally benefit parties and non-parties, they have also asked this Court to void all prior benefit denials made under the Dioxin regulation. As plaintiffs argue, if this Court were to void these decisions, parties to the action, including unidentified class members, could reaaply and use this Court's decision to gain back benefits beginning from the time of their initially denied application. *See, e.g.*, the settlement agreement reached in *Gott v. Walters*, published in 50 Fed.Reg. 45703–45704, ¶ 3 (November 1, 1985), in which all the joined parties gained back benefits dating from their first application to the VA. In contrast, plaintiff's claim that the applicable VA regulation, 38 C.F.R. § 3.114(a), would only provide benefits for non-parties back to the date of the Court's decision, or a newly published regulation following the issuance of the Court's decision. 38 C.F.R. § 3.114(a) states that "when compensation … is awarded pursuant to a liberalizing law or a liberalizing Veteran's Administration issue, approved by the Administrator … the effective date of such an award … shall not be earlier than the effective date of the act or administrative issue."

Defendants argue that this regulation does not apply. They contend that the terms "liberalizing law" or "liberalizing Veteran's Administration issue" do not encompass a judicial order requiring the VA to modify the Dioxin regulation. While those statutory terms may not include a judicial order, if plaintiffs prevail and the

---

**1.** In discussing *James*, the *Zepeda* court was not reviewing a class certification motion. Instead, the court was explaining that in the absence of a certified class, a District Court may not order relief on behalf of individuals not named as plaintiffs in the lawsuit, 753 F.2d at 727–728.

**2.** Some commentators have suggested that a focus on the need for class-wide relief is implied by the word "appropriate" in Rule 23(b)(2). See 3B A Moore's Federal Practice § 23.40[3], n. 10. If so, then the need requirement is not a test to be rigidly applied, but instead should be treated as one of many factors to be considered in making class certification determinations.

Court voids the existing regulation, the VA will be required by statute to issue a new regulation. That new regulation may constitute a "liberalizing law or Veteran's Administration issue". Therefore, the VA could apply Section 3.114(a) to non-party applicants whose benefits were denied under the existing regulation but awarded under a newly issued regulation. If the VA were to apply this regulation, then class certification would enlarge the scope of relief for class members, since they could gain a significantly larger amount of back benefits.

Defendants also argue that a different regulation, 38 C.F.R. § 3.105(a) is the applicable one. That section states that an "adjudicative decision which constitutes a reversal of a prior decision on the grounds of clear and unmistakable error has the same effect as if the corrected decision had been made on the date of the reversed decision". If this regulation were applied to nonparties, the nonparties would recover full back benefits.

The Court cannot assuredly predict which regulation the VA will follow, since both seem applicable. Given this uncertainty, the Court chooses to side with caution, and holds that there is an arguable "need" for class certification here.[3]

Plaintiff also argues that certification is necessary here to provide adequate notice of a change in regulations to previously denied applicants. Without certification, plaintiffs contend that they could win the battle to change the Dioxin regulation, and lose the war to provide benefits to wrongly denied applicants.

In response, defendants first assert that certification is premature, since even if the Court were to invalidate the existing regulation, the VA might not liberalize its standards in a new regulation. While this argument is true, it is a non-sequitor. It is fully within the Court's power to stay the issuance of notice until after the VA has issued a new regulation, and to dispense with notice altogether if the newly issued regulation does not materially alter the present regulations.

Second, defendants argue that "only" 31,000 veterans, a small percentage of all Vietnam veterans, have applied for and been denied benefits; only these veterans would be entitled to personal notice. Though this percentage may indeed be small, the fact that 31,000 veterans would be entitled to notice further attests to the necessity of class certification, and is therefore not a valid argument against it, even if some of these veterans would receive notice through alternative means.

Finally, defendants attest that it would be burdensome to personally notify 31,000 veterans, many of whom have undoubtedly changed addresses since their date of application for benefits. However, if plaintiffs are correct that the existing regulation is illegal, defendants can hardly claim that it is unfair for them to correct their error by notifying the veterans who have been harmed by the regulation. Moreover, notice may not be as burdensome as defendants suggest. See *infra* at 125. Alternatively, if defendants prevail, the Court could decertify the class and dispense with notice.[4]

For all of these reasons, the Court holds that class certification is necessary in this case. If this circuit does indeed adhere to the need requirement developed by other circuits, plaintiffs have amply demonstrated a need for certification.

2. **Failure to Exhaust Administrative Remedies.**

Defendants also argue that class certification should be denied, since the named plaintiffs have failed to exhaust their administrative remedies. None of the named

---

**3.** The Court also notes that plaintiffs have offered to forego certification if the VA agreed to provide full back benefits to all previously denied applicants, should plaintiffs prevail. The VA has not assented to this offer, suggesting that it would not choose to apply the more generous regulation.

**4.** This order should not be interpreted as a ruling on which side would be required to bear the expense of notifying class members.

plaintiffs presented the claims raised in this lawsuit to the VA, either during their individual claim adjudications or in a petition for rulemaking under the Administrative Procedure Act, 5 U.S.C. § 553(e). Defendants cite *Phillips v. Klassen*, 502 F.2d 362, 369 (D.C.Cir.1974), requiring at least one class member to exhaust administrative remedies before proceeding in federal court as a member of a class action. Plaintiffs do not dispute that none of the named plaintiffs have raised the issues of this lawsuit before the VA. However, they argue that exhaustion is unnecessary in this case.

Before applying the exhaustion doctrine to this case, the Court notes that "[u]nless application of the doctrine of exhaustion of remedies is statutorily mandated, its application rests within the sound discretion of the trial court", *Southeast Alaska Conservation Council v. Watson*, 697 F.2d 1305, 1309 (9th Cir.1983). The Court is not aware of any statute mandating exhaustion in this case. Moreover, "[j]udicially developed exhaustion requirements ... are inherently susceptible of judicial refinement and modification. Such court-made requirements 'are tailored to fit the peculiarities of the administrative system Congress has created' *McKart v. United States*, 395 U.S. 185, 195, [89 S.Ct. 1657, 1663, 23 L.Ed. 2d 194] (1969) ... [with] [t]he underlying goal [of ensuring] the expeditious administration of justice", *Montgomery v. Rumsfeld*, 572 F.2d 250, 253 (9th Cir.1978).

■ In the absence of a statutorily mandated exhaustion requirement, courts apply a balancing test to determine whether litigants may proceed directly in federal court. The policies and factors to be weighed include:

1) Allowing an agency to exercise its own expertise, *Weinberger v. Salfi*, 422 U.S. 749, 765, 95 S.Ct. 2457, 2466, 45 L.Ed.2d 522 (1975);

2) Ensuring an adequate record for judicial review, *Id.* at 765, 95 S.Ct. at 2466;

3) Preventing deliberate flouting of agency procedure, *Montgomery, supra*, 572 F.2d at 253;

4) Giving the agency an opportunity to correct its own errors, *Salfi, supra*, 422 U.S. at 765, 95 S.Ct. at 2466;

5) Determining whether the agency has finally and firmly taken a position on the issues raised in the lawsuit, *Atlantic Richfield Co. v. United States Department of Energy*, 769 F.2d 771, 782 (D.C.Cir.1984), *Lopez v. Heckler*, 725 F.2d 1489, 1500 (9th Cir.1984);

6) Determining whether the class-based claims for relief are collateral to the merits of individual claims, *Bowen v. City of New York*, 476 U.S. 467, 106 S.Ct. 2022, 2031, 90 L.Ed.2d 462;

7) Determining whether the litigants are likely to suffer irreparable harm if not granted prompt judicial review; *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18, *Liberty Alliance of the Blind v. Califano*, 568 F.2d 333, 346 (3rd Cir.1975).

1. Agency Expertise.

■ The exhaustion of remedies doctrine is intended in part to allow an agency to apply their expertise. As noted, plaintiffs have alleged that the VA has committed procedural errors in determining that chloracne alone is dioxin-related. While the VA obviously has great expertise in making these scientific determinations, it does not possess particular expertise in determining what procedures adhere to the statutory mandate of the Dioxin Act and the Administrative Procedure Act, 5 U.S.C. §§ 551 et seq. Courts frequently review agency rules to determine whether agencies have adequately examined the full range of relevant evidence, applied the correct legal standards in making their determinations, and faithfully adhered to the notice and comment requirements of the Administrative Procedure Act. *See*, for example, *Motor Vehicle Mfrs. Ass'n v. State Farm Mut.*, 463 U.S. 29, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983), in which the Supreme Court required the National Highway Traffic Safety Administration (NHTSA) to reconsider its rescission of a rule mandating the installation of passive restraints in automobiles, since NHTSA failed to review

all relevant evidence, failed to articulate the reasons for its findings, and made a clear error of judgment in rejecting the safety benefits of automatic seatbelts. It is clearly the VA's job to promulgate a rule governing dioxin adjudications; it is the court's job to review the procedures and standards adopted by the VA in making the rule. Therefore, this Court's hearing of the case now does not invade upon the agency's expert functions.[5]

2. The Need for an Adequate Record.

■ The exhaustion requirement also helps ensure that the agency makes a record "which is adequate for judicial review", *Salfi*, 422 U.S. at 765, 95 S.Ct. at 2467. In this case, the VA has already made a final determination by promulgating the Dioxin Regulation. The Court presumes that through discovery, the parties will be able to provide the Court with a full record of both the procedures and the legal standards followed by the VA in promulgating the Dioxin Regulation. Therefore, the Court is satisfied that a remand to the agency is not necessary for developing an adequate record.

3. Preventing Deliberate Flouting of Agency Procedure.

This factor instructs courts to consider whether the early hearing of the plaintiff's case will encourage future litigants to bypass the agency's own procedures, *Montgomery, supra,* 572 F.2d at 253.

■ This policy is not implicated here. The named plaintiffs have all submitted claims to the VA, and have been denied.[6] Moreover, the VA has already conducted its own rulemaking process in establishing the Dioxin Regulation. The agency's procedures have been followed by the litigants, and the Court's hearing of the plaintiff's claims will not engender disrespect for the agency's procedures.

4. Allowing the Agency to Correct Its Own Errors.

This factor is best considered in conjunction with another factor—whether the agency has firmly and finally made a decision on the issues raised in the lawsuit, so that a remand would be futile.

There are strong separation of power reasons to avoid unnecessary constitutional or statutory litigation by allowing an agency to correct its own errors, *Salfi, supra,* 422 U.S. at 756, 95 S.Ct. at 2462. However, that policy is not served when "it is 'highly unlikely that the [agency] would change its position if the case were remanded to it' ", *Atlantic Richfield v. U.S. Department of Energy,* 769 F.2d 771, 782 (D.C.Cir.1984), quoting *Athlone Indus., Inc. v. Consumer Product Safety Comm'n,* 228 U.S.App.D. C. 80, 84, 707 F.2d 1485, 1489 (1983). In fact, as the *Atlantic Richfield* court observed, " '[w]hen resort to the agency would in all likelihood be futile, the cause of overall efficiency will not be served by postponing judicial review, and the exhaustion requirement need not be applied' ", 769 F.2d at 782, quoting *Athlone,* 228 U.S.App. D.C. at 84, 707 F.2d at 1489.

In *Atlantic Richfield,* plaintiff ARCO sought relief from the levy of discovery

---

5. Defendants cite *Traynor v. Walters,* 791 F.2d 226, 229 (2d Cir.1986), *cert. granted* — U.S. ——, 107 S.Ct. 1368, 94 L.Ed.2d 684 (1987) which noted that the "VA has never disclaimed its authority to determine whether its own regulations comply with federal statutes or whether they are properly applied to a particular case". However, in that case the court addressed the question of whether the trial court had *jurisdiction* under 38 U.S.C. § 211(a) to hear statutory challenges to VA benefit decisions. The Second Circuit held that the statute precluded such review. The Ninth Circuit, however, has held that § 211(a) does not preclude such review. *See Evergreen State College v. Cleland,* 621 F.2d 1002, 1008 (9th Cir.1980). The Supreme Court may soon resolve this circuit conflict, having

granted certiorari in *Traynor, supra,* and *McKelvey v. Turnage,* 792 F.2d 194, 199 (D.C.Cir.1986), *cert. granted* — U.S. ——, 107 SCt. 1368, 94 L.Ed.2d 684 (1987).

6. Defendants assert that only two of the named plaintiffs have had benefit claims denied under the Dioxin regulation; plaintiffs allege that four plaintiffs have had their claims denied under the regulation. The other seven plaintiffs have had their claims denied under a pre-Dioxin regulation that is allegedly identical to the Dioxin regulation. The time for appeal for those seven plaintiffs has apparently expired, making their judgements final.

sanctions imposed by the Department of Energy (DOE). ARCO argued that the DOE had no authority to adjudicate price control violations, and therefore could not exercise that authority with discovery sanctions, 769 F.2d at 774. The court held that ARCO was not required to exhaust its administrative remedies by challenging the DOE's authority before the DOE itself. The court noted that the department "had structured its regulatory processes on the premise that it has power to act in an adjudicatory capacity", and that it had defended this power in prior remedial proceedings, *Id.* at 782.

Similarly, in *Bowen v. City of New York*, 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986), plaintiffs challenged the Social Security Administration's policy of presuming that certain mentally disabled individuals were employable. The SSA argued that plaintiffs had failed to exhaust their administrative remedies since they had not presented these claims to the SSA. In rejecting defendant's argument, the Supreme Court held that the policy of allowing agencies to correct their own errors was outweighed by the policy against requiring litigants to participate in futile proceedings:

> This case is materially distinguishable from one in which a claimant sues in district court, alleging mere deviation from the applicable regulations in his particular administrative proceeding. In the normal course, such individual errors are fully correctable upon subsequent administrative review since the claimant on appeal will alert the agency to the alleged deviation ... [In this case, however] the District Court found a systematic, unrevealed policy that was inconsistent in critically important ways with established regulations ... [Since] the policy was being adhered to by state agencies due to pressure from SSA ... exhaustion would have been futile.

106 S.Ct. at 2032.

While the VA's Dioxin Regulation may not be quite as firm and final as the DOE's decision to adjudicate oil price control violations, it is similar to the SSA policy challenged in *Bowen.* Like the SSA policy in *Bowen,* the VA itself has adopted a system-wide policy; any errors committed in adopting the policy were made by the VA itself, not an individual fact-finder. Futhermore, the VA has adopted its position after completing a notice and comment procedure, while the SSA in *Bowen* had allegedly adopted an unpublished, clandestine policy. Moreover, during the VA's notice and comment procedure, the VA received extensive commentaries from members of congress, government agencies, private groups, and health organizations. The VA rejected many of the arguments made by the plaintiffs in this lawsuit, such as the need to establish specific standards for evaluating scientific studies, 50 Federal Register at 34452–34453, and the causal connection between herbicide exposure and diseases other than chloracne, *Id.* at 34455. Therefore, the VA's position is likely to be even firmer, and less susceptible to self-correction, than the SSA's policy in *Bowen.*

■ Thus, while it may not be literally futile to require plaintiffs to petition the VA to rescind the Dioxin Regulation, the Court finds that the likelihood of plaintiffs gaining such relief is low.

5. The extent to which class-based claims for relief are collateral to the merits of individual adjudications.

Courts are more likely to waive the exhaustion requirement when the class-based constitutional or statutory challenge to the agency action is collateral to, or independent of, the individual class member's entitlement to benefits. In *Rodrigues v. Donovan,* 769 F.2d 1344 (9th Cir.1985), for example, plaintiff challenged the termination of his worker's compensation benefits on procedural due process grounds. The District Court, erroneously holding that exhaustion was required by statute, dismissed the claim, since the plaintiff had failed to present the due process challenge to the agency. The 9th Circuit held that exhaustion was not required by statute for this type of challenge, and remanded the case for reconsideration of whether exhaustion could be waived. The Court ex-

pressed doubts that the requirement should be applied to the case, noting that "[e]xhaustion is typically thought of as a precondition to a review of the merits of an agency determination, but ... [plaintiff] is not seeking review of the merits of the [agency's] decision", *Id.* at 1349.

Similarly, in *Bowen, supra,* the Supreme Court waived the exhaustion requirement in part because the plaintiffs' "claims in this lawsuit are collateral to the claims for benefits that class members had presented administratively", 106 S.Ct. at 2031.

■ This case is similar to both *Rodrigues* and *Bowen.* Plaintiffs' claim that the VA committed procedural and substantive errors in adopting the VA regulation is collateral to the types of issues the individual litigants would ordinarily raise before the VA, such as whether they had been exposed to dioxin and whether they suffer from a disabling disease. Though the class claims and individual claims overlap to the extent that both the class and the individuals are asserting that their diseases were caused by exposure to dioxin, the class attack on the VA's procedural irregularities is distinct from any individual's attack on their denial of benefits.

### 6. The Need for Prompt Judicial Review.

A final factor to weigh is the extent to which plaintiffs will suffer irreparable harm if required to present their claims to the administrative agency.

In *Bowen, supra,* the Supreme Court recognized that the plaintiffs would suffer irreparable harm if required to exhaust their administrative remedies. The Court noted that " 'the ordeal of having to go through the administrative appeal process may trigger a severe medical setback' ", 106 S.Ct. at 2032, quoting the District Court's opinion, and the Court applied this finding to waive the requirement.

Similarly, in *Liberty Alliance of the Blind v. Califano,* 568 F.2d 333 (3rd Cir. 1977), blind recipients of supplemental security income benefits challenged the SSA's method of deducting income earned by the recipients from their benefits. In waiving the exhaustion requirement for the plaintiffs, the court noted that "plaintiffs here are largely dependent upon public assistance payments. An erroneous termination or substantial reduction of this assistance would severely burden their subsistence", *Id.* at 345.

■ In this case, many of the plaintiff's allege that they are suffering from serious disabling diseases. Therefore, though plaintiffs may not suffer quite the degree of harm as the *Bowen* or *Liberty* plaintiffs if required to present their claim to the VA, the Court holds that imposing that substantial burden upon them is not justified, especially in light of the other factors already discussed.[7]

Accordingly, the Court rejects defendants' exhaustion argument against class certification.

### 3. Ambiguity.

Defendants' third argument against class certification is that the class is not sufficiently well-defined.[8] Defendants cite *Adashunas v. Negley,* 626 F.2d 600 (7th

---

7. Defendants cite *Herron v. Heckler,* 576 F.Supp. 218, 225 (N.D.Cal.1983), in which the District Court refused to waive the exhaustion requirement in a challenge to the Social Security Administration's accounting procedures. However, in *Herron,* unlike this case, exhaustion of all the named plaintiffs' individual claims was required by statute, 42 U.S.C. § 405(g). In addition, the SSA had never decided the issues posed in the lawsuit during either adjudicatory or rulemaking procedures. In this case, as already discussed, the VA has heard and decided many of the claims posed by this lawsuit in its prior rulemaking procedure.

8. In this section of defendants' brief, defendants also argue that commonality and typicality are lacking. The Court rejects those contentions, *supra* at 117–118. Defendants also argue that the Vietnam Veterans of America lacks standing to pursue this litigation. However, the VVA meets the requirements for associational standing established in *Hunt v. Washington Apple Advertising Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977), since individual members of the VVA may sue on their own behalf, the organization's purpose of assisting eligible Vietnam Veterans is furthered by this litigation, and the VVA could pursue this claim without individual members.

Cir.1980) for the proposition that a class may not include unidentified future members who are only "suspected to exist". However, *Adashunas* is factually different from this case. In *Adashunas*, plaintiffs sought to certify a class of all Indiana school age children with learning disabilities who have not received an appropriate education in the Indiana public schools. *Id.* at 601. The court identified two major defects with plaintiffs' proposed class. First, the court held that it would be extremely difficult to test and identify all children to determine if they had learning disabilities. Second, since disabled children have highly diverse disabilities, they could not all allege the same kinds of unlawful treatment by the state, *id.* at 603–604.

■■■ In contrast, the class members here are readily identifiable, since they will identify themselves by filing claims for benefits. Moreover, all have suffered the same kind of harm—denial of benefits due to the Dioxin Regulation or threat of such denial.

In addition, the Court notes that two different district courts have certified an almost identical class of plaintiffs. In *In Re "Agent Orange" Product Liability Litigation,* 506 F.Supp. 762, 788 (E.D.N.Y. 1980), the District Court granted conditional certification to a class of plaintiffs composed of "all persons who claim injury from exposure to Agent Orange and their spouses, children, and parents who claim direct or derivative injury therefrom", *Id.* at 788. The court held that such a class "can be readily identified", *Id.* at 788. This class was granted final certification by Chief Judge Weinstein in *In Re "Agent Orange" Product Liability Litigation,* who stated "[t]he class is … adequately defined and clearly ascertainable", 100 F.R. D. 718, 729 (E.D.N.Y.1983).

The Court recognizes that Judge Weinstein has great expertise in adjudicating the problem of Vietnam Veteran's exposure to dioxin, *See* Peter H. Schuck, *Agent Orange on Trial: mass toxic disasters in the courts* (1986). The Court will defer to his determination that litigation by Agent Orange victims may proceed as a class action.

4. Notice.

Defendants' finally object that it will be impossible to adequately notify all class members about this litigation. Once again, Judge Weinstein's decision in *In Re Agent Orange* is instructive. To solve the problem of notifying the members of such a large class, the court ordered mailings to all persons on the VA's "Agent Orange Registry", broadcasts on television and radio, publication in major newspapers, and the establishment of a toll-free telephone line to provide relevant information. 100 F.R.D. at 728–730.

■■■ Without intimating that any of these methods will be necessary at later stages of this litigation, defendants have not provided the Court with any reasons why these or similar methods of providing notice could not be adopted for this case.

Therefore, the Court rejects this objection to class certification.

CONCLUSION.

For all the foregoing reasons, plaintiffs' motion for class certification is granted.

IT IS SO ORDERED.