NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**DOUGLAS A. CONSTANTINE,**
*Claimant-Appellant*

**v.**

**DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2022-1648

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 18-7044, Chief Judge Margaret C. Bartley, Judge Amanda L. Meredith, Judge William S. Greenberg.

---

Decided:  November 4, 2024

---

CHRIS ATTIG, Attig Curran Steel PLLC, Little Rock, AR, argued for claimant-appellant.  Also represented by HALEY SMITH.

SOSUN BAE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee.  Also represented by BRIAN M. BOYNTON, ERIC P. BRUSKIN, PATRICIA M.

McCARTHY; CHRISTOPHER O. ADELOYE, BRIAN D. GRIFFIN, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

————————————

Before REYNA, TARANTO, and STOLL, *Circuit Judges.*

PER CURIAM.

Douglas A. Constantine served on active duty in the Korean Demilitarized Zone (DMZ) during 1968–1969. The Department of Veterans Affairs (VA) eventually awarded him disability benefits for ischemic heart disease that (under certain legal presumptions) it deemed connected to his service in the Korean DMZ, where Agent Orange was used. But Mr. Constantine contends that he is entitled an earlier effective date for such benefits because, he asserts, (a) he is a member of the class certified in 1987 in an action brought by Vietnam veterans in the U.S. District Court for the Northern District of California and (b) the still-live consent decree entered in that case in 1991 entitles him to the earlier effective date he seeks here. *See Nehmer v. United States Veterans' Administration*, 118 F.R.D. 113, 116 (N.D. Cal. 1987) (*Nehmer Certification Order*); *Nehmer v. United States Veterans' Administration*, No. CV-86-6160, 1991 U.S. Dist. LEXIS 22110, at *1–6 (N.D. Cal. May 17, 1991) (*Nehmer Consent Decree*). VA's Board of Veterans Appeals denied the requested earlier effective date, citing a VA regulation, 38 C.F.R. § 3.816, and concluding that Mr. Constantine was not within the *Nehmer* class.

Mr. Constantine appealed to the Court of Appeals for Veterans Claims (Veterans Court), arguing that the *Nehmer* court had already decided that the consent decree covers Korean DMZ-only service members, and the Veterans Court should thus set aside the Board decision and remand for application based on that coverage. VA's Secretary responded that the *Nehmer* court's decree did not cover Mr. Constantine and the Board's decision therefore

should be affirmed. The Veterans Court chose neither party's argued-for disposition and instead dismissed Mr. Constantine's appeal from the Board, "declin[ing] to exercise jurisdiction over his *Nehmer* argument." *Constantine v. McDonough*, 35 Vet. App. 81, 89, 93 (2022). The Veterans Court concluded that the question of Mr. Constantine's class membership had not been answered in his favor by the *Nehmer* court. *Id.* at 83, 91. And the Veterans Court concluded that it should not determine the answer to the *Nehmer*-scope issue itself; rather, it reasoned, the issue could be presented to and should be decided by the *Nehmer* court. *Id.* at 88–93; *see id.* at 89 (relying on "the general principle of avoiding duplicative litigation," citing discussion in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817 (1976), of *Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183 (1952)).

Mr. Constantine appeals the dismissal by the Veterans Court. He argues that (1) issue preclusion requires the Board to give him the benefit of an earlier effective date because the *Nehmer* court already determined his membership within the *Nehmer* class and (2) if he is wrong about issue preclusion, the Veterans Court should have stayed rather than dismissed his appeal from the Board. We hold that he is not entitled to issue preclusion here. We do not address the merits of the Veterans Court's conclusion insisting on resolution of yet-undecided decree scope by the *Nehmer* court, a conclusion not challenged here. But we vacate the Veterans Court's judgment because the Veterans Court decided that dismissal was the proper remedy, given its deferral-to-another-tribunal conclusion, without any regard to whether a dismissal could cause a loss to Mr. Constantine that would be avoided by a stay. VA has not established either the legal propriety of such disregard or that the choice between stay and dismissal could make no difference to Mr. Constantine's ultimate relief if he is found

to come within the *Nehmer* decree.  We therefore vacate and remand.

## I

### A

In 1984, responding to concerns about adverse health effects of exposure to Agent Orange, a herbicide that contains the chemical dioxin, Congress enacted the Veterans' Dioxin and Radiation Exposure Compensation Standards Act (Dioxin Act), Pub. L. No. 98-542, 98 Stat. 2725 (1984), which sought to ensure that veterans received compensation for disabilities arising from such exposure to dioxin during their service in Vietnam. *Euzebio v. McDonough*, 989 F.3d 1305, 1311 (Fed. Cir. 2021).  The Dioxin Act directed VA (at the time, the Veterans' Administration) to determine what diseases are caused by exposure to dioxin and to promulgate regulations governing dioxin-related disability claims.  38 U.S.C. § 354 (1984).  After VA adopted regulations in 1985, a group of Vietnam veterans and their survivors filed a class action in the Northern District of California (the *Nehmer* litigation) to challenge the regulations as arbitrary and capricious—in particular, as identifying too few dioxin-related conditions.  *See Nehmer v. United States Veterans' Administration*, 712 F. Supp. 1404, 1409 (N.D. Cal. 1989) (*Nehmer I*) (describing challenge); *Constantine*, 35 Vet. App. at 82.

In December 1987, the district court in *Nehmer*, adopting the plaintiffs' proposal, certified a class consisting of

> all current or former service members, or their next of kin (a) who are eligible to apply to, who will become eligible to apply to, or who have an existing claim pending before the Veteran's Administration for service-connected disabilities or deaths arising from exposure during active-duty service to herbicides containing dioxin or (b) who have had a claim denied by the VA for service-connected disabilities

> or deaths arising from exposure during active-duty service to herbicides containing dioxin.

*Nehmer Certification Order*, 118 F.R.D. at 116; *see Constantine*, 35 Vet. App. at 83. The language of the class certification does not explicitly limit the *Nehmer* class definition to veterans who served in Vietnam (land or water). But the *Nehmer Certification Order* states that the lawsuit was filed "as a class action on behalf of Vietnam Veterans," 118 F.R.D. at 115, and that "plaintiffs seek to certify a class of all Vietnam veterans who have been exposed to dioxin and either have filed or will file a claim[] for benefits," 118 F.R.D. at 116. *See also Nehmer Certification Order*, 118 F.R.D. at 116–17 ("[T]his class is similar, if not identical, to the class certified in *In re Agent Orange Product Liability Litigation*, 506 F. Supp. 762, 787 (E.D.N.Y. 1980) . . . in which *Vietnam veterans* exposed to 'Agent Orange' sued the chemical companies that manufactured the herbicide.") (emphasis added); *id.* at 125. In 1989, the district court ruled on the merits of the case, finding errors in VA's implementation of the Dioxin Act and voiding certain claim denials by the Secretary. *Nehmer I*, 712 F. Supp. at 1409, 1423.

In 1991, Congress enacted the Agent Orange Act, Pub. L. No. 102-4, 105 Stat. 11 (1991), which "established presumptive service connection for a list of diseases resulting from herbicide exposure." *Constantine*, 35 Vet. App. at 83. Then-codified 38 U.S.C. § 316 required VA to "prescribe regulations providing that a presumption of service connection is warranted" for a disease whenever the VA Secretary determines that a "positive association exists between" that disease and herbicide exposure. *See* Pub. L. 102-4, § 2, 105 Stat. at 12. It also provided that the National Academy of Sciences would analyze and summarize scientific and medical evidence and provide reports to the Secretary on illnesses and health effects caused by exposure to dioxin and other chemical compounds in herbicides. *Id.*, §§ 2–3, 105 Stat. at 12–15; *see Euzebio*, 989 F.3d at 1312–14.

The *Nehmer* class and VA reached a settlement agreement, and the district court in *Nehmer* entered a consent decree in 1991. *Nehmer Consent Decree*, 1991 U.S. Dist. LEXIS 22110, at *1; *see Constantine*, 35 Vet. App. at 83 (describing consent decree). The consent decree details the VA Secretary's responsibilities for rulemaking and retroactive disability payments to class members. *Nehmer Consent Decree*, 1991 U.S. Dist. LEXIS 22110, at *1–7; *Constantine*, 35 Vet. App. at 83–84. In particular, the consent decree provides that as diseases come to be recognized as related to herbicide exposure, VA is to readjudicate claims based on such diseases that were previously denied by VA yet come within the denial-voiding ruling in the 1989 *Nehmer I* decision. *See Constantine*, 35 Vet. App. at 83–84.

The Veterans Court stated that "on four occasions" plaintiffs have sought enforcement of the 1991 consent decree. *Id.* For example, in 1999, the district court held that VA may not decline to readjudicate a previously denied claim "unless the claim had specifically alleged that herbicides were a factor in the veteran's death or injury, or VA's denial of the benefits expressly cited [38 C.F.R.] § 3.311a [later repealed] as grounds for denial." *Id.* (discussing *Nehmer v. United States Veterans' Administration*, 32 F. Supp. 2d 1175, 1177, 1184 (N.D. Cal. 1999) (*Nehmer II*) (applying consent decree)). The Ninth Circuit affirmed the *Nehmer II* holding, concluding that VA must "provide retroactive benefits to any class member who submitted a claim after May 3, 1989, based on a disease that is later service connected under the Agent Orange Act." *Nehmer v. Veterans' Administration of the Government of the United States*, 284 F.3d 1158, 1161 (9th Cir. 2002) (*Nehmer III*).

In 2003, the Secretary adopted 38 C.F.R. § 3.816 "to implement effective date rules in compliance with *Nehmer*." *Constantine*, 35 Vet. App. at 84; *see Effective Dates of Benefits for Disability or Death Caused by Herbicide Exposure; Disposition of Unpaid Benefits After Death of Beneficiary*, 68 Fed. Reg. 50966 (Aug. 25, 2003). The rule defines a

*Nehmer* class member as "a Vietnam veteran who has a covered herbicide disease" or "[a] surviving spouse, child, or parent of a deceased Vietnam veteran who died from a covered herbicide disease." 38 C.F.R. § 3.816(b)(1). Those individuals may receive, for a claim on which benefits are awarded, an effective date earlier than non-*Nehmer* claimants receive. In particular, although a claimant awarded compensation pursuant to a liberalizing law or issue (*i.e.*, one that creates a new or different benefit entitlement, *see* 38 C.F.R. § 3.114) receives an effective date no earlier than the effective date of the act or issue, a claimant that is a *Nehmer* member may receive an effective date as early as the date VA received the claim (if the disability was present then), irrespective of the effective date of the liberalizing law or issue. 38 C.F.R. §§ 3.114(a), 3.816(c)–(d); J.A. 74–75. We proceed on the assumption (without ourselves deciding) that a similar difference in effective date would apply to a person determined to be covered by the *Nehmer Consent Decree* even if that person is outside the VA regulation. *See Nehmer Certification Order*, 118 F.R.D. at 119 (explaining the difference in effective date).

In 2019, Congress enacted the Blue Water Navy Vietnam Veterans Act (the 2019 Act), which amended the Agent Orange Act. Pub. L. 116-23, 133 Stat. 966 (2019). Under the 2019 Act, veterans who served "*offshore* of the Republic of Vietnam during the period beginning on January 9, 1962, and ending on May 7, 1975, shall be presumed to have been exposed during such service to an herbicide agent." 38 U.S.C. § 1116A(b) (emphasis added). In addition, a presumption of service connection for certain diseases (under certain manifestation conditions) is now available to veterans who served "in or near the Korean Demilitarized Zone (DMZ), during the period beginning on September 1, 1967, and ending on August 31, 1971." 38 U.S.C. § 1116B(a)–(b).

In 2020, the district court in *Nehmer* considered whether "blue water navy veterans" of Vietnam—those

who served off-shore (not on land or on inland waterways) in Vietnam—were within the *Nehmer* decree. *Nehmer v. United States Department of Veterans Affairs*, No. CV-86-06160, 2020 WL 6508529, at \*2–3 (N.D. Cal. Nov. 5, 2020) (*Nehmer V*). The district court answered in the affirmative. *Id.* at \*3–5 (relying on *Procopio v. Wilkie*, 913 F.3d 1371, 1380 (Fed. Cir. 2019) (en banc)). In its decision, the district court observed: "[W]hile the consent decree does not use the words 'Republic of Vietnam,' its applicability turned on veteran eligibility for benefits under the Agent Orange Act, and so its provisions are limited, like the Act, to veterans who 'served in the Republic of Vietnam.'" *Id.* at \*3.

B

Mr. Constantine served in the U.S. Air Force, in 1968 and 1969, in the Korean DMZ, not in Vietnam. *Constantine*, 35 Vet. App. at 85; Constantine Opening Br. at 6; J.A. 208. On January 7, 2008, VA received a claim from Mr. Constantine (which he has said he filed on December 27, 2007) seeking disability benefits for service-connected ischemic heart disease, which the Board found in its 2018 decision was manifested as early as the 1990s, though not diagnosed until December 2011. *Constantine*, 35 Vet. App. at 85. After initially assigning a December 15, 2011 effective date, the Board assigned an effective date of August 31, 2010—"the date of the liberalizing law that added [ischemic heart disease] to the list of diseases presumptively associated with herbicide exposure." *Id.* (citing 38 C.F.R. § 3.114(a)(1); then citing *Diseases Associated With Exposure to Certain Herbicide Agents (Hairy Cell Leukemia and Other Chronic B-Cell Leukemias, Parkinson's Disease and Ischemic Heart Disease*, 75 Fed. Reg. 53202 (Aug. 31, 2010))); J.A. 77 (Board). That was when service connection of the condition was supported—by way of the newly-adopted presumption. In assigning the 2010 effective date, the Board rejected Mr. Constantine's argument that he is a member of the *Nehmer* class, and on that ground, it

rejected his request for an effective date based on his original claim (received by VA January 7, 2008). J.A. 74–75 (relying on 38 C.F.R. § 3.816 for identifying the scope of the *Nehmer* class as limited to those who served in Vietnam).

Mr. Constantine timely appealed the Board's decision to the Veterans Court on December 14, 2018, maintaining that he was a member of the *Nehmer* class based on the "clear and unambiguous" terms of the *Nehmer Consent Decree*. *Constantine*, 35 Vet. App. at 82–83; Constantine Opening CAVC Br. at 16–19. The Veterans Court disagreed, "reject[ing] Mr. Constantine's argument that the scope of the *Nehmer* class as it relates to the Korean DMZ has already been litigated and resolved in a manner that weighs in his favor." *Constantine*, 35 Vet. App. at 91. The Veterans Court continued: The *Nehmer* court's "adopt[ion of] plaintiffs' proposed class definition without a specific challenge from VA . . . does not mean that the scope of the *Nehmer* class as to whether it includes a veteran who served at the Korean DMZ was finally litigated and resolved at that time." *Id.*; *see also id.* at 82–83 (stating that "the District Court has not squarely addressed" the "fundamental question presented here"). The Veterans Court then held, invoking the *Kerotest* "[w]ise judicial administration" principle, 342 U.S. at 183, that determining whether the consent decree covers veterans like Mr. Constantine who served in the Korean DMZ but not Vietnam, a matter of first impression, is a task for the *Nehmer* court, not the Veterans Court. *Id.* at 89–93. On that basis, without further discussion of what disposition should be made of the appeal based on that conclusion, the Veterans Court "decline[d] to exercise jurisdiction" to decide the scope of the *Nehmer* decree and dismissed the appeal. *Id.* at 89, 92–93.

The Veterans Court entered a judgment dismissing the appeal from the Board on February 8, 2022. *Constantine*, 35 Vet. App. at 93; J.A. 1. Mr. Constantine timely appealed within the 60 days permitted by law. 38 U.S.C. § 7292(a);

28 U.S.C. § 2107(b).  We have jurisdiction under 38 U.S.C. § 7292(a), (c), (d) to address allegations of error in legal conclusions that are express or implicit in the Veterans Court's decision.  *See*, *e.g.*, *Taylor v. McDonough*, 71 F.4th 909, 924 (Fed. Cir. 2023) (en banc).

## II

Mr. Constantine makes two arguments on appeal.  The major argument is that the *Nehmer Consent Decree*'s coverage of non-Vietnam veterans like him was actually litigated and settled in the affirmative by the *Nehmer* court and, therefore, issue preclusion requires the VA Secretary to give him the benefit of the consent decree (without the Veterans Court itself construing the decree).  Constantine Opening Br. at 17–43.  The second, minor argument is that if issue preclusion does not apply, then the Veterans Court erred in dismissing the appeal from the Board, rather than staying the appeal to avoid any harm to him if he seeks and obtains a favorable scope determination from the *Nehmer* court and returns to VA for an earlier effective date of benefits.  *Id.* at 9–10, 49–53.  Both arguments present what we understand to be legal challenges that are within our jurisdiction to address, which the Secretary does not dispute.

## A

Both parties agree that the Veterans Court, in its opinion, held that a necessary requirement for issue preclusion was not met here—in substance determining that issue preclusion is unavailable—when it specifically rejected Mr. Constantine's argument that the *Nehmer* court already determined that the consent decree applied to Korean DMZ, non-Vietnam veterans like him.  Whether an issue-preclusion ruling is correct presents a question of law we answer de novo.  *SynQor, Inc. v. Vicor Corp.*, 988 F.3d. 1341, 1347 (Fed. Cir. 2021) ("The application of issue preclusion presents a question of law that we review de novo."); *Gabrielli v. McDonough*, No. 22-1505, 2024 WL 2968937, at *3 (Fed.

Cir. June 13, 2024). We agree with the Veterans Court on this point.

For Mr. Constantine to be entitled to issue preclusion against the government here, he would have to show that the issue of coverage of Korean DMZ, non-Vietnam veterans was, among other things, "actually litigated" with the government, and "determined" against the government, in the *Nehmer* litigation. *B & B Hardware, Inc. v. Hargis Industries, Inc.*, 575 U.S. 138, 148 (2015) (citing Restatement (Second) of Judgments § 27 (Am. L. Inst. 1980)). Mr. Constantine has not shown that to be so. He has not shown that the issue was ever litigated with the government in *Nehmer* or resolved against the government there.

Decisively, he has not identified any place in the record of the *Nehmer* litigation where the government and an adverse party in Mr. Constantine's position joined issue over coverage of veterans who had never served in Vietnam (land or territorial waters). That is enough to reject the assertion of issue preclusion. In addition, we have not been cited to a decision in *Nehmer* in which the court identifies the issue and decides it in favor of coverage of non-Vietnam veterans. Although the words of the class-certification order do not include a limitation to Vietnam veterans, that formulation, which might reflect a drafting oversight or might properly be understood in context as so limited, does not amount to a judicial decision on a litigated issue. Indeed, a number of pronouncements in the *Nehmer* litigation, including in the *Class Certification Order*, suggest an understanding that the case and relief in it may be limited to Vietnam veterans. *See supra* pp. 5, 8 (discussing *Nehmer Certification Order* and *Nehmer V*).[1]

---

[1] *See also Nehmer I*, 712 F. Supp. at 1407 ("This lawsuit is another round in the conflict between Vietnam

We do not decide the scope of the consent decree. All we decide is what the Veterans Court decided—that the *Nehmer* court has not, to date, resolved a litigated dispute over this issue against the government.

## B

Having correctly determined that issue preclusion does not apply, the Veterans Court then concluded that it must not determine the scope of the consent decree and must instead leave that matter to the *Nehmer* court. On appeal, Mr. Constantine does not challenge that conclusion, and the Secretary does not do so either. The dispute on appeal, once the argument for issue preclusion is rejected, is limited to the Veterans Court's bottom-line disposition of the case, *i.e.*, dismissal.

---

Veterans and the United States Government over Agent Orange . . . ."); *Nehmer II*, 32 F. Supp. 2d at 1183 (holding that the VA's policy violated the *Nehmer Consent Decree* because "[t]he VA's narrow view of this Court's order only serves to undermine, rather than protect, the ability of Vietnam veterans to obtain compensation for the devastating effects of diseases that are linked to Agent Orange, and hence their service in Vietnam"); *Nehmer III*, 284 F.3d at 1159–60 ("In this case we must interpret the requirements of a court-approved Stipulation and Order setting forth some of the United States Government's ongoing responsibilities to Vietnam veterans exposed to Agent Orange."); *Nehmer v. United States Department of Veterans Affairs*, 494 F.3d 846, 849 (9th Cir. 2007) ("The present question is whether the District Court, in a clarification and enforcement order issued in 2005, reasonably interpreted the earlier court-approved Stipulation and Order . . . that settled a class action lawsuit brought by veterans of the Vietnam war . . . .").

The Veterans Court, after concluding that the *Nehmer* court is the right tribunal to construe its decree, dismissed Mr. Constantine's appeal from the Board. It did so without discussing whether a stay of the appeal would protect against possible loss to Mr. Constantine that dismissal could cause. We read Mr. Constantine's brief on appeal to argue that dismissal without addressing that possible loss was a legal error.

As an initial matter, we reject the government's suggestion that we should deem Mr. Constantine to have "waived" the argument by not asking the Veterans Court for a stay in the event it declined to find the decree-scope issue already settled in his favor by the *Nehmer* court. Government Response Br. at 29–30. "An appellate court retains case-by-case discretion over whether to apply waiver." *Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1251 (Fed. Cir. 2005). Here, we think it appropriate not to find waiver.

The issue of what the Veterans Court should do if it rejected both issue preclusion and the possibility of itself determining the decree's scope was not framed for decision by either party in the Veterans Court. Mr. Constantine argued that the *Nehmer* decree's scope was settled by *Nehmer* in his favor and that the Veterans Court should remand for the Board to apply that determination to his case. Constantine CAVC Br. at 11–22. The Secretary did not argue for dismissal of the appeal; he urged the Veterans Court to conclude on its own that the *Nehmer* decree was inapplicable to Mr. Constantine and on that basis affirm the Board's decision. Secretary CAVC Br. at 5–11. Neither party's briefs proposed the middle position ultimately taken by the Veterans Court on its own—that the issue had not been resolved favorably to Mr. Constantine in the *Nehmer* litigation and the Veterans Court should not go further—and neither party's briefs discussed *Kerotest, Colorado River*, or other cases on abstention or related doctrines. In this situation, we conclude that it is not appropriate to find that

Mr. Constantine forfeited the argument about what disposition was proper if the Veterans Court were to *sua sponte* articulate and adopt the middle position it did.

We also conclude that the Veterans Court's choice of dismissal without any regard for whether dismissal might cause harm to Mr. Constantine that could be avoided by a stay was a legal error. As we have noted, neither party challenges and thus we do not decide the propriety of the Veterans Court's reliance on *Colorado River* to abstain from exercising jurisdiction in this appeal.[2] Instead, we address Mr. Constantine's challenge to the Veterans Court's dismissal of the case under its application of the *Kerotest* principle. The application of this "[w]ise judicial administration" principle, which is "equitable in nature," requires a consider-the-circumstances, case-specific inquiry. *Kerotest*, 342 U.S. at 183–84; *see, e.g., Landis v. North American Co.*, 299 U.S. 248, 254–55 (1936); *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1298–99 (Fed. Cir. 2012); *Kahn v. General Motors Corp.*, 889 F.2d 1078, 1082 (Fed. Cir. 1989). Once the principle is being applied, we conclude, the inquiry must extend to the proper disposition, and one relevant circumstance is whether a party seeking relief will suffer loss from dismissing the case rather than staying it while the deferred-to tribunal proceeds, such as when the deferred-to tribunal cannot grant complete relief, as has been recognized in related abstention contexts. *See, e.g., Ritchie Capital Management, L.L.C. v. BMO Harris Bank, N.A.*, 868 F.3d 661, 665–66 (8th Cir. 2017); *Montanore Minerals Corp. v. Bakie*, 867 F.3d 1160, 1166 (9th Cir. 2017); *Attwood v. Mendocino Coast District Hospital*, 886

---

[2] The Veterans Court devoted significant attention to its decision to abstain from exercising jurisdiction over the merits of Mr. Constantine's appeal. We need not and do not reach the Veterans Court's decision regarding abstention.

F.2d 241, 244 (9th Cir. 1989) (citing cases) (explaining that the choice of a stay rather than a dismissal sometimes has practical consequences, as where all issues are not resolved by the deferred-to proceeding); *cf. Quackenbush v. Allstate Insurance Co.*, 517 U.S. 706, 719–20 (1996) (discussing the difference between dismissal and stay in certain abstention settings involving monetary actions at law). Notably, the Secretary has not argued to us that the *Kerotest* principle can properly be applied wholly without regard to the potential practical difference between dismissal and stay as a disposition.

The Veterans Court in this case did not consider the consequences of staying versus dismissing, and this case involves a type of circumstance in which the difference might matter and so requires consideration. In particular, as the parties agree, the *Nehmer* court cannot award Mr. Constantine benefits even if it decides that Mr. Constantine is within the scope of the consent decree; only VA can award those benefits. *E.g.*, Constantine Opening Br. at 45; Government Response Br. at 27–29; Oral Argument at 9:20–9:36, https://oralarguments.cafc.uscourts.gov/default.aspx?fl=22-1648_10032024.mp3. The situation before us is therefore one in which the party requesting relief from the deferring tribunal cannot get complete relief from the deferred-to tribunal, a circumstance in which the former's relinquishment of jurisdiction by dismissal might result in a loss to the party seeking relief.

The Secretary has not shown the Veterans Court's disregard of the disposition question in the present case to be harmless. Even as to delay alone, Mr. Constantine has suggested that the difference between a stay and a dismissal might be the difference, once he obtains a favorable ruling from the *Nehmer* court, between obtaining quick consideration by the Board (on prompt remand from the Veterans Court) and starting over with a new claim within VA at levels below the Board, with appeals to the Board

and the Veterans Court—a difference, Mr. Constantine says, that might be a matter of years.  Oral Argument at 7:50–10:55.  The Secretary, for his part, suggests that Mr. Constantine might obtain payment from VA even more quickly with a dismissal, through a route separate from the normal claims process, but he has not elaborated to establish more than that this might be so, and he has not made clear how a stay would interfere with VA's ability to make such payment.  *Id.* at 24:08–28:26; Government Response Br. at 27–29.  We are left, on this record, with considerable uncertainty about whether dismissal would cause Mr. Constantine to lose something in the way of completeness or expeditiousness of relief following a favorable ruling in the *Nehmer* case.

Whatever VA or the Veterans Court might make clear in the future about processes ensuring no loss of benefits from dismissal in a situation like this one, on the present record we cannot find harmless error from the Veterans Court's failure to consider the disposition issue.  On this record, we must vacate the Veterans Court's dismissal of Mr. Constantine's appeal and remand for the Veterans Court to provide Mr. Constantine a reasonable period for him to seek relief from the *Nehmer* court and to hold his appeal in abeyance during that period and, if he seeks relief, until final disposition of his request for that relief.

## III

The decision of the Veterans Court is vacated, and the case remanded for proceedings consistent with this opinion.

The parties shall bear their own costs.

**VACATED AND REMANDED**