# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 18-7044

Douglas A. Constantine, Appellant,

v.

Denis McDonough,
Secretary of Veterans Affairs, Appellee.

On Appeal from the Board of Veterans' Appeals

(Argued November 4, 2020                    Decided January 14, 2022)

*Christopher F. Attig*, of Little Rock, Arkansas, for the appellant.

*Alexander M. Panio*, with whom *Dustin P. Elias*; *William A. Hudson, Jr.*, Acting General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Richard A. Daley*, Deputy Chief Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before BARTLEY, *Chief Judge*, and GREENBERG and MEREDITH, *Judges*.

BARTLEY, *Chief Judge*, filed the opinion of the Court. GREENBERG, *Judge*, filed an opinion dissenting in part.

BARTLEY, *Chief Judge*: In 1987, Vietnam veterans and their survivors brought a class action suit challenging certain VA regulations regarding Agent Orange exposure. *Nehmer v. U.S. Veterans' Admin.*, 712 F. Supp. 1404, 1407-09 (N.D. Cal. 1989) (*Nehmer I*). From that litigation, the parties agreed to a Final Stipulation and Order ("consent decree" or "*Nehmer* stipulation") regarding VA's obligations to class members. *See* Final Stipulation & Order, *Nehmer v. U.S. Veterans' Admin.*, No. CV-86-6160, 1991 U.S. Dist. LEXIS 22110 (N.D. Cal. May 17, 1991) (*Nehmer Consent Decree*). The U.S. District Court for the Northern District of California (District Court) approved the consent decree in 1991 and, over the intervening 30 years, has overseen enforcement of its terms.

Currently before this Court is veteran Douglas A. Constantine's appeal, through counsel, of an October 31, 2018, decision of the Board of Veterans' Appeals (Board) that denied entitlement to an effective date earlier than August 31, 2010, for the award of service connection for coronary

artery disease (CAD). Record (R.) at 4-14.[1] In reaching that decision, the Board, relying on 38 C.F.R. § 3.816, determined that the veteran was not a member of the *Nehmer* class and, therefore, was not entitled to a retroactive effective date under *Nehmer*. Properly characterized, Mr. Constantine's arguments are a request that this Court review the scope of the *Nehmer* litigation and determine whether the Board erred when it found that he was not entitled to the benefit of the earlier effective date rules provided to *Nehmer* class members. Although we have jurisdiction over Mr. Constantine's appeal of the October 2018 Board decision, *see* 38 U.S.C. § 7252(a), and we have the authority to "decide all relevant questions of law" implicated by that decision, 38 U.S.C. § 7261(a)(1), including the proper effective date as to his service-connected CAD benefits, we decline to exercise jurisdiction here for prudential reasons. Were we to address the fundamental question presented here, particularly where the District Court has not squarely addressed that question, we risk two federal courts arriving at conflicting outcomes, unnecessarily complicating the litigation. Accordingly, in this rare circumstance, we decline to exercise jurisdiction and will dismiss the appeal.

## I. *NEHMER* LITIGATION

Before delving into the specifics of Mr. Constantine's appeal, it is important to understand the *Nehmer* class action suit and subsequent enforcement actions, as they serve as the basis for Mr. Constantine's arguments and his prayer for relief.

In February 1987, Beverly Nehmer, along with other Vietnam veterans and their survivors ("plaintiffs"), brought a class action suit challenging VA's promulgation of 38 C.F.R. § 3.311a (1986), which implemented part of the *Veterans' Dioxin and Radiation Exposure Compensation Standards Act of 1984*, Pub. L. No. 98-542 (Oct. 24, 1984), then-codified at 38 U.S.C. § 354. *Nehmer v. U.S. Veterans' Admin.*, 118 F.R.D. 113, 115-16 (N.D. Cal. 1987) ("*Nehmer Class Cert. Order*"); *see Nehmer I*, 712 F. Supp. at 1407-09. As certified by the District Court, the class of plaintiffs consisted of

> all current and former service members, or their next of kin (a) who are eligible to apply to, who will become eligible to apply to, or who have an existing claim

---

[1] In the same decision, the Board assigned the effective date of August 31, 2010, which was earlier than the previously assigned effective date of December 15, 2011. R. at 4. Because this determination is favorable to Mr. Constantine, the Court will not disturb it. *See Medrano v. Nicholson*, 21 Vet.App. 165, 170 (2007) ("The Court is not permitted to reverse findings of fact favorable to a claimant made by the Board pursuant to its statutory authority."), *aff'd in part, dismissed in part sub nom. Medrano v. Shinseki*, 332 F. App'x 625 (Fed. Cir. 2009).

pending before the [VA] for service-connected disabilities or deaths arising from exposure during active-duty service to herbicides containing dioxin or (b) who have had a claim denied by the VA for service-connected disabilities or death arising from exposure during active-duty service to herbicides containing dioxin.

*Nehmer Class Cert. Order*, 118 F.R.D. at 116; *see Nehmer I*, 712 F. Supp. at 1409. In May 1989, the District Court invalidated § 3.311a(d) and voided VA claim denials between September 25, 1985, and May 3, 1989, that were based on the invalidated regulation. *Nehmer I*, 712 F. Supp. at 1423.

Congress then passed the *Agent Orange Act of 1991*, Pub. L. No. 102-4 (Feb. 6, 1991) ("Agent Orange Act"), then-codified at 38 U.S.C. § 316, which established presumptive service connection for a list of diseases resulting from herbicide exposure. *See* 38 U.S.C. § 1116 (2021). Although the statute prospectively required VA to prescribe additional regulations when sound medical and scientific evidence establishes a positive association between herbicide exposure and a disease process, it did not provide for readjudication of previously denied claims.

But VA and the *Nehmer* class entered into a consent decree, which the District Court approved, that detailed VA's ongoing responsibilities for further rulemaking and retroactive disability payments to class members. *Nehmer Consent Decree*, 1991 U.S. Dist. LEXIS 22110; *see Nehmer v. U.S. Veterans' Admin.*, 32 F. Supp. 2d 1175, 1177 (N.D. Cal. 1999) (*Nehmer II*) (describing the consent decree). As relevant, the consent decree provided that, after the Secretary issues a final rule establishing a presumption of service connection for a disease determined to be associated with herbicide exposure, VA will readjudicate all claims voided by *Nehmer I* involving that disease. *Nehmer Consent Decree*, 1991 U.S. Dist. LEXIS 22110, ¶ 3; *see id*. at ¶ 5 (describing the assignment of an effective date associated with the grant of benefits following readjudication); *see also Nehmer II*, 32 F. Supp. 2d at 1177 (reciting paragraphs 3 and 5 of the consent decree).

Since the District Court's approval of the consent decree in 1991, plaintiffs on four occasions have sought enforcement of the terms of the consent decree in the District Court. In 1999, the District Court agreed with the plaintiffs that VA wrongly interpreted the consent decree as not requiring readjudication of a previously denied claim unless the claim had specifically alleged that herbicides were a factor in the veteran's death or injury, or VA's denial of the benefits expressly cited § 3.311a as grounds for denial. *Nehmer II*, 32 F. Supp. 2d at 1183-84. In 2002, the U.S. Court of Appeals for the Ninth Circuit (Ninth Circuit) affirmed the District Court's interpretation of the consent decree as requiring VA to "provide retroactive benefits to any class

member who submitted a claim after May 3, 1989, based on a disease that is later service connected under the Agent Orange Act." *Nehmer v. Veterans' Admin. of Government of U.S.*, 284 F.3d 1158, 1161 (9th Cir. 2002) (*Nehmer III*).

Following *Nehmer III*, VA added § 3.816 to implement effective date rules in compliance with *Nehmer. Effective Dates of Benefits for Disability or Death Caused By Herbicide Exposure; Disposition of Unpaid Benefits After Death of Beneficiary*, 68 Fed. Reg. 4132, 4134 (Jan. 28, 2003) (proposed rule), 68 Fed. Reg. 50,966 (Aug. 25, 2003) (final rule). As relevant, the regulation defined "[c]overed herbicide disease" as "a disease for which the Secretary of Veterans Affairs has established a presumption of service connection before October 1, 2002[,] pursuant to the Agent Orange Act." 38 C.F.R. § 3.816(b)(2) (2004); *see* 68 Fed. Reg. at 4138 (noting that September 30, 2002, was the sunset date of the Agent Orange Act).[2] However, following the second enforcement action, the Ninth Circuit, in 2007, affirmed the District Court's interpretation that "the plain language of the [c]onsent [d]ecree . . . applies to diseases determined to be service-connected after, as well as before, September 30, 2002." *Nehmer v. U.S. Dep't of Veterans Affairs*, 494 F.3d 846, 855 (9th Cir. 2007) (*Nehmer IV*).

In 2020, the District Court agreed with plaintiffs that VA was wrongfully interpreting the phrase "Republic of Vietnam" in section 1116 as only including veterans who had boots on the ground in Vietnam and brown water Navy veterans, thereby impermissibly not affording blue water Navy veterans relief under the terms of the consent decree. *Nehmer v. U.S. Dep't of Veterans Affairs*, No. CV-86-06160, 2020 WL 6508529, at *5-6 (N.D. Cal. Nov. 5, 2020) (*Nehmer V*) (citing *Procopio v. Wilkie*, 913 F.3d 1371, 1380 (Fed. Cir. 2019)).[3] And most recently, in November 2021, the District Court concluded that the last sentence of § 3.816(f)(3) conflicted with the consent decree and ordered it be rescinded because it creates a "serious risk" of misleading a veteran's late-claiming surviving children regarding their entitlement to retroactive payment where additional surviving children have already received payment. *Nehmer v. U.S. Dep't of Veterans Affairs*, No. C 86-06160, 2021 U.S. Dist. LEXIS 218075, at *11 (N.D. Cal. Nov. 10, 2021)

---

[2] The regulation also defined a *Nehmer* class member, for purposes of the regulation, as a Vietnam veteran who has a covered herbicide disease, or a surviving spouse, child, or parent of a deceased Vietnam veteran who died from a covered herbicide disease. 38 C.F.R. § 3.816(b)(1) (2004). The current version of § 3.816(b)(1) contains the same definition of a *Nehmer* class member for purposes of the regulation. 38 C.F.R. § 3.816(b)(1) (2021).

[3] Brown water refers to the inland waters of the landmass of Vietnam and blue water refers to the offshore waters. *See, e.g.*, *Nehmer V*, 2020 WL 6508529, at *3; *Gray v. McDonald*, 27 Vet.App. 313, 317 n.4 (2015).

4

(*Nehmer VI*); *see Awards Under the Nehmer Court Orders for Disability or Death Caused by a Condition Presumptively Associated with Herbicide Exposure; Implementing Court Order*, 86 Fed. Reg. 68,409, 68,409-10 (Dec. 2, 2021) (removing the last sentence of § 3.816(f)(3)).

## II. MR. CONSTANTINE'S CLAIM

Mr. Constantine served honorably in the U.S. Air Force from October 1965 to October 1970. R. at 1908. His service included duty at the demilitarized zone (DMZ) in the Republic of Korea, *see* R. at 2009, but not in the Republic of Vietnam.

In January 2008, Mr. Constantine filed, among other things, a claim for service connection for a heart condition. R. at 3333-45. As relevant here, a VA regional office (RO) awarded service connection for CAD associated with herbicide exposure in April 2012. R. at 2657-61. The RO assigned an effective date of December 15, 2011, noting that this date corresponded to the first date that Mr. Constantine was diagnosed with ischemic heart disease (IHD). *Id.*; *see* R. at 2727; *see also* 38 C.F.R. § 3.309(e) (2011) (listing IHD, which includes CAD, among those diseases presumptively associated with herbicide exposure).

In May 2012, Mr. Constantine filed a Notice of Disagreement seeking an earlier effective date for the award of service connection for CAD. R. at 2595, 2633. Following a December 2012 Statement of the Case, R. at 2514-41, Mr. Constantine timely perfected an appeal to the Board, R. at 2431-34. Before the Board, in June 2015 and July 2016, Mr. Constantine, through current counsel, argued, in relevant part, that he is a member of the *Nehmer* class because the District Court's class definition was not limited based on the geographic location of herbicide exposure. R. at 1403-05 (June 2015), 520-22 (July 2016).

In the October 2018 decision on appeal, the Board found the evidence in relative equipoise as to the date when Mr. Constantine's CAD first manifested and, therefore, concluded, based on application of the benefit of the doubt doctrine, that symptoms began as early as the 1990s. R. at 14. However, the Board awarded an effective date of August 31, 2010, the date of the liberalizing law that added IHD to the list of diseases presumptively associated with herbicide exposure. R. at 10 (citing 38 C.F.R. § 3.114(a)(1)). In doing so, the Board rejected Mr. Constantine's argument that he is a member of the *Nehmer* class, because he did not serve in the Republic of Vietnam during the relevant time period. R. at 7-8 (citing 38 C.F.R. § 3.816(b)(1)(i)). This appeal followed.

## III. ARGUMENTS

Mr. Constantine argues that he is a member of the *Nehmer* class and, therefore, entitled to the effective date relief prescribed by the consent decree. He argues that the District Court certified a class of current and former servicemembers who were exposed to herbicides, irrespective of the geographic location of their exposure. Appellant's Brief (Br.) at 13-14. He argues that the Secretary did not challenge the geographic scope of the class before the District Court and, therefore, that issue was fully litigated and resolved. *Constantine v. McDonough*, No. 18-7044, Oral Argument [hereinafter "Oral Argument"] at 5:37-6:58, 16:12-17:56.[4] As a result, he argues that the Board exceeded its jurisdiction when it improperly limited the scope of the *Nehmer* consent decree to only Vietnam veterans and their survivors. Appellant's Br. at 11-14, 16-22. He emphasized during oral argument that he is not asking this Court to interpret the class certification order or consent decree—a function he asserts is reserved for the District Court—but instead is arguing that this Court instruct the Board to apply the plain language of the class certification order in the same manner that the District Court, as the "enforcing court," would. Oral Argument at 13:00-13:36, 18:49-20:28. He urges the Court to set aside the Board decision as *ultra vires* and remand the appeal to the Board with "instructions to follow the clear and unambiguous language of the consent decree." Appellant's Br. at 22; *see* Reply Br. at 7-8.

The Secretary argues that the Board correctly found that Mr. Constantine is not entitled to the *Nehmer* effective date provisions in § 3.816 because he did not serve in Vietnam. Secretary's Br. at 5-11; Oral Argument at 29:36-31:45. He argues that VA promulgated § 3.816 to implement the *Nehmer* order, and that Mr. Constantine's "argument is based on a revisionist interpretation of the *Nehmer* class" and ignores important contextual aspects of the *Nehmer* lawsuit, including that it was "initiated by Vietnam veterans, on behalf of Vietnam veterans, and involved solely regulatory presumptions for those who served" in Vietnam. Secretary's Br. at 8; *see* Oral Argument at 27:30-27:58 (arguing that VA and the *Nehmer* plaintiffs understood that the class was based on Vietnam service only and that understanding was enshrined in § 3.816). He additionally argues that, because the veteran is asking the Court to interpret the terms of the consent decree, the proper recourse is for Mr. Constantine to file a motion for enforcement with the District Court as subject-matter jurisdiction lays with that court. Oral Argument at 27:58-29:36, 31:45-32:50, 34:09-36:03.

---

[4] Available at https://www.youtube.com/watch?v=fOXYeGqAwA4.

6

Synthesizing the arguments, the operative facts of this appeal are not in dispute. It is undisputed that Mr. Constantine did not serve in the Republic of Vietnam, including within its territorial waters, during the relevant time period contemplated by section 1116. He served at the Korean DMZ at a minimum between April and August 1969, and, thus, VA recognizes his exposure to herbicides. *See* R. at 7; *see also* 38 C.F.R. § 3.307(a)(6)(iv) (2021).[5] It is also undisputed that Mr. Constantine has a diagnosed heart condition (CAD) that VA considers to be presumptively associated with herbicide exposure. *See* R. at 10; *see also* 38 C.F.R. § 3.309(e) (2021). And it is undisputed that VA added IHD (including CAD) to the list of diseases presumptively associated with herbicide exposure effective August 31, 2010. *See* 38 C.F.R. § 3.309(e). On these grounds, the Board granted the current effective date of August 31, 2010. R. at 14 (citing 38 C.F.R. § 3.114(a)(1)).[6]

The parties also agree that Mr. Constantine does not meet VA's regulatory definition of a *Nehmer* class member found in § 3.816(b)(1). The parties disagree, however, as to whether the regulatory definition is controlling in this case and take differing views as to whether the regulation fully or only partially describes the *Nehmer* class. Reply Br. at 2-7; Secretary's Br. at 11; Oral Argument at 18:49-20:28, 29:36-31:45. But because Mr. Constantine does not directly challenge the regulation's validity, the Court need not address the regulatory definition further.

---

[5] The presumption of herbicide exposure for veterans serving at the Korean DMZ between April 1, 1968, and August 31, 1971, became effective February 24, 2011, *see Herbicide Exposure and Veterans With Covered Service in Korea*, 76 Fed. Reg. 4245 (Jan. 25, 2011) (final rule) (adding 38 C.F.R. § 3.307(a)(6)(iv)). Because Mr. Constantine's service included service at the Korean DMZ as part of a recognized military unit from April to August 1969, VA found that he was exposed to herbicides. R. at 2011, 2659, 2821; *see VA Adjudication Procedures Manual*, M21-1, VIII.i.1.A.3.a-c (revised Nov. 2, 2021); *see also McKinney v. McDonald*, 796 F.3d 1377, 1379 (Fed. Cir. 2015) (discussing VA's policy found in the M21-1 prior to promulgation of the final regulation). Effective January 1, 2020, Congress extended the regulatory presumptive period to begin on September 1, 1967, and end on August 31, 1971. 38 U.S.C. § 1116B; *see* Blue Water Navy Vietnam Veterans Act of 2019, Pub. L. No. 116-23, § 3(a), 133 Stat. 966, 969 (June 25, 2019) (codified at 38 U.S.C. § 1116B).

[6] Although he argued before the Board that an effective date as early as October 2009 was warranted based on application of effective date rules regarding liberalizing laws, R. at 1405, he raises no argument on appeal to this Court that the Board erred in applying the liberalizing law provisions to award the current effective date of August 31, 2010. Accordingly, the Court deems those arguments abandoned. *See Grivois v. Brown*, 6 Vet.App. 136, 138 (1994) (explaining that the Court has discretion to deem issues not raised on appeal as abandoned).

7

# IV. ANALYSIS

The central divergence in this case is in the parties' respective characterizations of Mr. Constantine's specific prayer for relief and their views of this Court's role in affording that relief.

## A. Court of Appeals for Veterans Claims Jurisdiction

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Our jurisdiction stems from the *Veterans' Judicial Review Act* (VJRA), Pub. L. No. 100-687, 102 Stat. 4105 (Nov. 18, 1988). As part of the VJRA, Congress created our Court and gave us "exclusive jurisdiction to review decisions of the Board." 38 U.S.C. § 7252(a). Prior to enactment of the VJRA, claimants seeking to enforce veterans benefits statutes sought aggregate relief in the district courts. *See Monk v. Shulkin*, 855 F.3d 1312, 1319 (Fed. Cir. 2017) (compiling cases including *Nehmer*); *Skaar v. Wilkie*, 32 Vet.App. 156, 177 (2019) (en banc order) (compiling cases). However, the VJRA fundamentally changed the availability of judicial review of VA decisions. And recent cases have announced our authority to aggregate claims for class action. *Monk*, 855 F.3d at 1319 (describing authority in the petition context); *Skaar*, 32 Vet.App. at 177-78 (describing authority in the appeal context).

One hallmark function of the VJRA is that Congress transferred exclusive jurisdiction to our Court—and thereby divested subject-matter jurisdiction from federal district courts—over VA-benefits-related claims. Other federal courts, including the Ninth Circuit, have acknowledged our exclusive jurisdiction over VA-benefits-related claims. *See, e.g.*, *Veterans for Common Sense v. Shinseki*, 678 F.3d 1013, 1016, 1021-23, 1031-32 (9th Cir. 2012) (en banc); *Vietnam Veterans of America v. Shinseki*, 599 F.3d 654, 656 (D.C. Cir. 2010); *Beamon v. Brown*, 125 F.3d 965, 971-73 (6th Cir. 1997); *Hall v. U.S. Dep't of Veterans' Affairs*, 85 F.3d 532, 534 (11th Cir. 1996); *Zuspann v. Brown*, 60 F.3d 1156, 1158-59 (5th Cir. 1995); *Hicks v. Veterans Admin.*, 961 F.2d 1367, 1369-70 (8th Cir. 1992); *Addington v. United States*, 94 Fed. Cl. 779, 782 (2010).

In addition, Congress provided this Court, within our scope of review, the "exclusive jurisdiction to consider all questions involving benefits under laws administered by the VA, . . . includ[ing] factual, legal, and constitutional questions." H.R. Rep. 100-963, at 5 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5782, 5786; *see Veterans for Common Sense*, 678 F.3d at 1021 (quoting H.R. Rep. 100-963 and emphasizing "all"); *see also* 38 U.S.C. § 7261(a)(1) (providing the Court the authority to "decide all relevant questions of law"). This Court also has the authority

to hold unlawful decisions and conclusions of the Board not in accordance with law and set aside or reverse adverse findings of fact that are clearly erroneous. 38 U.S.C. § 7261(a)(3), (4).

## B. District Court Jurisdiction

Although the District Court approved the consent decree, the authority to enforce contracts in settlement of federal litigation "requires its own basis for jurisdiction." *Kokkonen*, 511 U.S. at 378. A federal court has ancillary jurisdiction to enforce a settlement agreement if the settlement terms were included in the federal court's judgment order. *Id*. at 380-81. As the Supreme Court explained:

> [I]f the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal—either by separate provision (such as a provision "retaining jurisdiction" over the settlement agreement) or by incorporating the terms of the settlement agreement in the order[,] . . . a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist.

*Id*. at 381; *see Nehmer IV*, 494 F.3d at 856 ("Ordinarily, when a district court incorporates the terms of a settlement agreement or a stipulation into an order, it retains subject matter jurisdiction to interpret and enforce the contents of that order." (citing *Kokkonen*, 511 U.S. at 378, 381)).

The District Court incorporated the terms of the consent decree into its May 1991 order granting the consent decree and October 1991 final judgment order. *Nehmer Consent Decree*, 1991 U.S. Dist. LEXIS 22110, ¶ 9 (providing that the final judgment order will incorporate the terms of the consent decree); Order at *2, *Nehmer v. U.S. Veterans' Admin.*, No. CV-86-6160 (N.D. Cal. Oct. 9, 1991) (final judgment order stating that the order incorporates the terms of the consent decree and noting that the "case shall be closed with [VA] subject to ongoing, enforceable obligations in the future").

Therefore, the District Court retains subject-matter jurisdiction to enforce the terms of the consent decree and that court has the authority to consider a motion for clarification and enforcement. *See Nehmer IV*, 494 F.3d at 856 (describing this finding of jurisdiction as "unexceptionable"); *see also Nehmer V*, 2020 WL 6508529, at *6; *Nehmer II*, 32 F. Supp. 2d at 1178 n.4.

## C. Intersecting Jurisdiction

Mr. Constantine asserts error in the Board's denial of an earlier effective date for his service-connected CAD; such an appeal clearly falls within our exclusive jurisdiction. However, his earlier-effective-date argument is that the Board wrongly excluded him from the *Nehmer* class,

9

violating the terms of the consent decree. These arguments create an intersection between our exclusive jurisdiction over his individual appeal of a final Board denial of an earlier effective date of benefits and the District Court's ongoing jurisdiction over *Nehmer* litigation and enforcement. Given these unique circumstances, and for reasons we will explain, we conclude that Mr. Constantine's case presents such an exceptional case that we decline to exercise jurisdiction over his *Nehmer* argument.

The Supreme Court has set forth principles regarding a federal court's decision to decline the exercise of jurisdiction where concurrent jurisdiction exists, either in parallel state and federal proceedings or wholly federal concurrent proceedings. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976) (*Colorado River*). Here, we are not presented with parallel state and federal jurisdiction. And, although there is ongoing enforcement litigation in the District Court, we are not presented with the prototypical model of concurrent federal jurisdiction, as Mr. Constantine himself is not simultaneously seeking relief with the District Court. However, the arguments he raises lead to the difficult situation before us—the intersection of jurisdictional authority. Although the cases referenced herein do not squarely address the scenario present in this case, they inform our decision to decline the exercise of jurisdiction as a matter of discretion.

When parallel state and federal litigation exists, *Colorado River* and its progeny set forth several factors that a federal court should consider in deciding whether to decline the exercise of jurisdiction. *Colorado River*, 424 U.S. at 818; *see Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983) (*Moses Cone*). As relevant to our analysis, those factors include which court first assumed jurisdiction and the desirability of avoiding piecemeal litigation. *Moses Cone*, 460 U.S. at 15-16, 17 n.20; *Colorado River*, 424 U.S. at 818.

However, when wholly federal concurrent jurisdiction exists "no precise rule has evolved," and courts aim to abide by the general principle of avoiding duplicative litigation. *Colorado River*, 424 U.S. at 817 (citing *Kerotest Mfg. Co. v. C-O Two Fire Equipment Co.*, 342 U.S. 180, 183 (1952) (*Kerotest*)); *see Kerotest*, 342 U.S. at 183 ("Wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, does not counsel rigid mechanical solution of such problems."). "That rule reflects an elementary principle of 'wise judicial administration.'" *In re Google Inc.*, 588 F. App'x 988, 990 (Fed. Cir. 2014) (citing *Colorado River* and *Kerotest*).

Using these guiding principles, we decline to exercise jurisdiction in this case. First, the District Court is the court that first assumed jurisdiction as to the underlying issue here—approving the class of plaintiffs that will receive relief under the *Nehmer* stipulation. Although the VJRA fundamentally changed the availability of judicial review of veterans benefits decisions, the *Nehmer* suit began prior to the enactment of the VJRA and the establishment of our Court. The VJRA did not change the "general principle of law [that] once jurisdiction attaches in a case, a court continues to have jurisdiction over the matter until a decision has been reached." *Veterans' Judicial Review Act*, 134 CONG. REC., S 16632-01 (Oct. 18, 1988) (testimony from Senator Cranston, who also stated that "no pending case would be adversely affected" by passage of the VJRA). Because the District Court is the court that first assumed jurisdiction, this factor weighs in favor of that court resolving Mr. Constantine's arguments that the *Nehmer* class includes veterans, like him, who were exposed to Agent Orange outside of the Republic of Vietnam.[7]

Second, and relatedly, the District Court has actively supervised enforcement of the *Nehmer* consent decree over the intervening 30 years since it approved the consent decree in 1991, including its recent decisions in *Nehmer V* and *Nehmer VI*. To that end, the District Court and the Ninth Circuit have continued to maintain their subject-matter jurisdiction over the *Nehmer* litigation despite passage of the VJRA and creation of our Court. *See Nehmer I*, 712 F. Supp. at 1410-11 (citing *Veterans' Judicial Review Act*, 134 CONG. REC., S 16632-01 (Senator Cranston's testimony)); *Nehmer IV*, 494 F.3d at 856; *Nehmer V*, 2020 WL 6508529, at *6 (citing *Nehmer I*, 712 F. Supp. at 1410-11). In contrast, the Ninth Circuit addressed a class action suit filed after the VJRA in *Veterans for Common Sense* and held that the VJRA divested the District Court of jurisdiction to consider that portion of the suit alleging delays in VA's provision of medical care and adjudicating disability benefits claims, 678 F.3d at 1020-32, stating, in part, that "review of decisions made in the context of an individual veteran's VA benefits proceedings are beyond the jurisdiction of federal courts outside the review scheme established by the VJRA," *id*. at 1023. Therefore, as the District Court has actively supervised enforcement of the consent decree, this

---

[7] *Accord Northwest Airlines, Inc. v. American Airlines, Inc.*, 989 F.2d 1002, 1005 (8th Cir. 1993) ("The well-established rule is that in cases of concurrent jurisdiction, the first court in which jurisdiction attaches has priority to consider the case.") (internal quotation omitted); *see also In re Telebrands Corp.*, 773 F. App'x 600, 602 (Fed. Cir. 2016) (noting that, where the overlap between two cases is "complete or nearly complete, the usual rule is for the court of first jurisdiction to resolve the issue") (citing *West Gulf Mar. Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 730 (5th Cir. 1985)).

factor weighs in favor of the District Court resolving Mr. Constantine's arguments that under the *Nehmer* stipulation he is a class member.

Third, were we to entertain Mr. Constantine's arguments, we would have to weigh in on a fundamental question about the *Nehmer* stipulation and litigation—the scope of the certified class.[8] Weighing in as to that issue could subject the parties to duplicative litigation and frustrate the District Court's role in ongoing enforcement. Mr. Constantine argues that he is a member of the *Nehmer* class because the language used to define the class as certified by the District Court does not contain a reference to where herbicide exposure occurred. And he argues that the Board impermissibly narrowed the scope of the certified class by excluding him as a member. Although he frames these arguments as specific to his appeal alone, the arguments raise fundamental questions that address the scope of the *Nehmer* stipulation and litigation. To the extent that he attempts to argue otherwise, the Court disagrees.

Initially, Mr. Constantine mischaracterizes the Board decision when he argues that the Board narrowed the scope of the consent decree. In rejecting Mr. Constantine's argument that he is a *Nehmer* class member, the Board relied on § 3.816, VA rulemaking documents, and VA training materials as evidence that the *Nehmer* class is limited to servicemembers who served in Vietnam during the relevant period. R. at 7-8. The Board did not independently review the class certification order or the terms of the consent decree or address the scope of those documents. As discussed above, Mr. Constantine does not argue that § 3.816 applies in his case.

More fundamentally, the Court rejects Mr. Constantine's argument that the scope of the *Nehmer* class as it relates to the Korean DMZ has already been litigated and resolved in a manner that weighs in his favor. *See* Oral Argument at 5:37-6:58, 16:12-17:56. The District Court adopted plaintiffs' proposed class definition without a specific challenge from VA, *see Nehmer Class Cert. Order*, 118 F.R.D. at 116-25, but that does not mean that the scope of the *Nehmer* class as to whether it includes a veteran who served at the Korean DMZ was finally litigated and resolved at that time. In fact, the District Court decision in *Nehmer V*—which considered VA's interpretation of the term "Republic of Vietnam" as it related to applicability of the *Nehmer* stipulation—specifically counsels against such a conclusion. *See Nehmer V*, 2020 WL 6508529, at *5-6.

---

[8] *See, e.g.*, *Marcus v. BMW of North America, LLC*, 687 F.3d 583, 592-93 (3d Cir. 2012) (describing ascertainability of the class as "an essential prerequisite of a class action"); *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) ("It is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable.").

Moreover, Mr. Constantine's own arguments are inconsistent as he not only argues that the scope of the *Nehmer* class as to the Korean DMZ has already been litigated but also asks us to give the same binding effect that the District Court would *if* it were presented with this question. *See* Oral Argument at 13:00-13:36, 18:49-20:28, 56:45-57:16. He argues that in *Nehmer II*, *Nehmer III*, and *Nehmer IV*, the District Court or the Ninth Circuit told VA that the terms of the consent decree are meant to be interpreted broadly to ensure that *Nehmer* class members receive their full compensation. *Id.* at 9:12-9:48. However, as noted, the District Court has not squarely addressed the question Mr. Constantine is raising—whether, based on a lack of geographic limitation in the class certification order, servicemembers exposed to herbicides in locations other than the Republic of Vietnam are members of the *Nehmer* class. His request that we give the class certification language the same binding effect that the District Court would is a request that we interpret the class certification language in a manner that he believes would be consistent with his interpretation of *Nehmer II*, *Nehmer III*, and *Nehmer IV*. But, because the District Court has not squarely addressed the issue Mr. Constantine raises, a judicial pronouncement from this Court about the scope of the *Nehmer* class could unnecessarily complicate the *Nehmer* suit, frustrate the District Court's role in ongoing enforcement, and result in conflicting outcomes. Therefore, this factor weighs in favor of the District Court resolving the issue Mr. Constantine raises.

### D. Our Prior Case Law Related to the *Nehmer* Litigation

The concept of coexistence of jurisdictional authority is not new in the *Nehmer* litigation. In the past, we have addressed questions tangential to the *Nehmer* litigation, but those cases did not require us to address the type of fundamental questions Mr. Constantine raises.

Prior to VA's promulgation of § 3.816, this Court and the Federal Circuit applied the holdings of *Nehmer I* and *Nehmer II* to determine if individual claimants were entitled to earlier effective dates under the *Nehmer* stipulation. In *Mitscher v. West*, we concluded that, because Ms. Mitcher's 1986 application for burial benefits was not a formal claim for dependency and indemnity compensation (DIC), she was not entitled to an earlier effective date under *Nehmer II* as there was no previously denied claim that could be subject to readjudication. 13 Vet.App. 123, 127-28 (1999). In *Williams v. Principi*, this Court and the Federal Circuit concluded that, because Ms. Williams's previously denied claims for DIC predated promulgation of § 3.311a(d), those claims were not voided by *Nehmer I* and *Nehmer II* and not subject to the terms of the *Nehmer* stipulation. 15 Vet.App. 189, 195-97 (2001) (en banc), *aff'd*, 310 F.3d 1374, 1379-80 (Fed. Cir.

13

2002). Similarly, in *Bonner v. Nicholson*, we concluded that, because Ms. Bonner's previously denied claim for DIC predated promulgation of § 3.311a(d), an earlier effective date under the *Nehmer* stipulation was not warranted. 19 Vet.App. 188, 194 (2005) (citing *Williams*, 15 Vet.App. at 195-97), *aff'd*, 497 F.3d 1323 (Fed. Cir. 2007). Because these cases applied the clear holdings of *Nehmer I* and *Nehmer II*, they are distinctly different from the case at bar, where Mr. Constantine is asking us to address a fundamental question that has not been squarely answered by the District Court or Ninth Circuit.

Following promulgation of § 3.816, this Court and the Federal Circuit addressed the applicability of that regulation. In *Robinson v. Wilkie*, the Federal Circuit rejected an argument that § 3.816(c) did not govern the assignment of the effective date for an increased disability evaluation for the veteran's heart condition because that evaluation was assigned as part of the initial grant of benefits awarded under the consent decree: "The effective date for a *Nehmer* class member is determined by 38 C.F.R. § 3.816(c)." 905 F.3d 1353, 1357 (Fed. Cir. 2018). And in *DeLisio v. Shinseki*, we discussed the potential availability of an earlier effective date for Mr. DeLisio based on application of § 3.816. 25 Vet.App. 45, 48-49, 52 (2011).

In contrast, cases involving fundamental questions and VA's compliance with the consent decree have proceeded before the District Court and Ninth Circuit. In *Nehmer IV*, the Ninth Circuit addressed § 3.816's compliance with the consent decree vis-à-vis the sunset provision of the Agent Orange Act. 494 F.3d at 856-58. In *Nehmer V*, the District Court addressed VA's compliance with the consent decree as it related to VA's interpretation of the phrase "Republic of Vietnam" in section 1116 as excluding blue water Navy veterans. 2020 WL 6508529, at *5-6.[9] And in *Nehmer VI*, the District Court was again asked to address § 3.816's compliance with the consent decree, this time as it relates to payments to later-discovered dependents. 2021 U.S. Dist. LEXIS 218075, at *3. Thus, because Mr. Constantine raises fundamental arguments regarding the scope of the *Nehmer* litigation, we conclude that wise judicial administration dictates that we decline to exercise jurisdiction over his *Nehmer* argument and, because that is the only contention he raises, we will not otherwise address the adverse October 2018 Board decision.

---

[9] Our Court and the Federal Circuit also addressed the definition of "Republic of Vietnam" as found in section 1116 and § 3.307(a)(6)(iii). *See Haas v. Nicholson*, 20 Vet.App. 257, 263-75 (2006), *rev'd sub nom. Haas v. Peake*, 525 F.3d 1168, 1175-97 (Fed. Cir. 2008), *overruled by Procopio*, 913 F.3d at 1375-81. However, those cases addressed the validity of the regulation as an interpretation of the statute.

E. Summary

Congress transferred exclusive subject-matter jurisdiction over veterans benefits cases to our Court in 1988. *Nehmer* remains a vestige of the pre-VJRA judicial system—a historical anachronism—and that fact and the factors discussed herein weigh in favor of declining to exercise jurisdiction over the only argument raised by the veteran in this case. But we stress, however, the unique and extraordinarily rare situation that this case presents. Our decision to decline exercising jurisdiction in Mr. Constantine's appeal comports with general principles of comity and judicial economy that counsel against courts exercising jurisdiction in such a way that might interfere with the order of another court. *See, e.g., Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981) (citing *Bergh v. State of Washington*, 535 F.3d 505, 507 (9th Cir. 1976), *Torquay Corp. v. Radio Corp. of America*, 2 F. Supp. 841, 844 (S.D. N.Y. 1932) ("[A]s a matter of comity and of the orderly administration of justice, [a] court should refuse to exercise its jurisdiction to interfere with the operation of a decree of another federal court.")). Accordingly, we decline to exercise jurisdiction in this case. To the extent that Mr. Constantine believes that he is wrongfully being excluded from the *Nehmer* class, he is not without recourse; he can seek enforcement with the District Court.

**V. CONCLUSION**

After consideration of the parties' briefs, oral arguments, the record on appeal, and the governing law, the appeal of the October 31, 2018, Board decision that denied entitlement to an effective date earlier than August 31, 2010, for the award of service connection for CAD is DISMISSED.

GREENBERG, *Judge*, dissenting in part: The majority opinion is thoughtful and logical and exemplifies the concept of judicial restraint. *See Hayburn's Case*, 2 U.S. (2 Dall.) 409, 410 n., 1 L. Ed. 436 (1792); *see also* Maeva Marcus & Robert Teir, *Hayburn's Case: A Misinterpretation of Precedent,* 1988 WIS. L. REV. 527. I concur with the opinion to the extent that the Court recognizes that we *could* exercise jurisdiction over this case. I dissent from the decision to decline to exercise jurisdiction here. The appellant timely appealed a Board decision that found that he was not a *Nehmer* claimant. The concern about duplicative litigation unfairly penalizes a veteran who has properly brought a question of law before the Court. The Court states:

"The concept of coexistence of jurisdictional authority is not new in the *Nehmer* litigation. In the past, we have addressed questions tangential to the *Nehmer* litigation, but those cases did not require us to address the type of fundamental questions Mr. Constantine raises." *Ante* at 13. Even if it is true that the Court has yet to address a *fundamental question* pertaining to the *Nehmer* cases, we should not be distracted from the command we have received from Congress. That is, we have *exclusive* jurisdiction to review Board decisions, *see* 38 U.S.C. § 7252, and to the extent necessary for our review, we "*shall* decide *all* relevant questions of law," 38 U.S.C. § 7261 (emphasis added).

A veteran is being penalized because of the mere *possibility* that future litigation may be brought in a different court that *may* result in a different outcome than the Court could have held today. To the extent that the Court suggests that the appellant is not without recourse and can seek enforcement with the District Court, there is no explanation as to how, even if he succeeded there, he would not end up back in the VA benefits system to receive payment. Ultimately, the majority opinion is well written and consistent with precedent, yet judicial economy concerns ring hollow as a worthy veteran has been turned away from the Court. For this reason, although I agree with the majority that we could exercise jurisdiction here, I dissent from the unnecessary refusal to do so.